UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LARRY W. DENDY, SR.                                                    CIVIL ACTION

VERSUS                                                                 NO. 05-1329

SHERIFF HARRY LEE, ET AL                                               SECTION "A" (5)

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment (Rec. Doc. 14) filed by Defendants, Jefferson Parish Sheriff Harry Lee, and Deputy Chief James Miller. Plaintiff, Larry Dendy, a former Jefferson Parish Sheriff's Deputy, opposes the motion.[1] The motion, set for hearing on April 19, 2006, is before the Court on the briefs, without oral argument. For the reasons that follow, the motion is **GRANTED**.

**I. BACKGROUND**

Plaintiff filed suit in this court against Sheriff Harry W. Lee and Deputy Chief James Miller on April 5, 2005. He contends that he was employed by Lee as a sergeant in charge of

---

[1] Plaintiff's "Opposition to Motion to Dismiss" seems to have been inaccurately titled. The Court will treat the "Opposition to Motion to Dismiss" as an "Opposition to Defendants' Motion for Summary Judgment." Further, in the "Opposition," Plaintiff advised the Court that he was abandoning his due process claim, noting his intention to file a signed affidavit supporting the abandonment.

1

building maintenance at the Jefferson Parish Correctional Center, and that his employment was wrongfully terminated. (Complaint, ¶ 2). Plaintiff alleges that he worked at the jail during the public investigation into corrupt bail bond practices there. (*Id.*, ¶ 5). He contends that he was interviewed by the FBI, or Federal Bureau of Investigation, and subsequently subpoenaed to appear before the grand jury, but did not testify. (*Id.*, ¶¶ 7-8). He alleges that while at the grand jury location, an FBI investigator told him that he was informed that Plaintiff had given out keys to an interview booth to Louis Marcotte, the subject of the investigation, so that Marcotte could interview inmates as he pleased. (*Id.*, ¶ 9). Plaintiff claims he denied this, as he had no knowledge that keys even existed. (*Id.*). However, upon learning this, he advised his supervisor and also told him that he had not actually testified before the grand jury. (*Id.*, ¶ 10). He alleges that he was then directed to Internal Affairs, where Deputy Chief James Miller asked him why he told the FBI that Miller was questioning him about the jail keys. (*Id.*, ¶ 11). Plaintiff allegedly denied this, as he had never met Miller before, much less mentioned the jail keys to him. (*Id.*, ¶ 13).

He asserts that he then went on a two-week vacation, and when he returned, the FBI searched his house pursuant to a warrant for child pornography, which they found on his daughter's computer, because it was attached to songs she downloaded. (*Id.*, ¶ 14). Plaintiff also asserts that the FBI found his daughter's boyfriend under her bed as well as a small amount of marijuana, some of which the boyfriend claimed was Plaintiff's. (*Id.*, ¶ 15). Plaintiff alleges that he falsely admitted to possession of the marijuana in order to protect his daughter. (*Id.*, ¶ 16). Next, he contends that two agents assigned to the bail bond case appeared and asked him

about that case, and in response, he suggested another witness. (*Id.* at ¶ 17). He asserts that all FBI agents left without making any arrests. (*Id.*). He then told his supervisor that he had suggested another witness. (*Id.*, ¶ 18). Later that day, he was allegedly required to report to Internal Affairs with a copy of the warrant. (*Id.*, ¶ 19). Plaintiff contends he was interviewed and questioned about the warrant. (*Id.*, ¶¶ 21-22). He alleges that when the interviewers, one of whom was Miller, objected that the warrant did not show what the FBI had taken from him, Plaintiff produced a receipt from his back pocket. (*Id.*, ¶ 22). He asserts that at that point, Miller effectively accused him of concealing evidence and hiding the truth. (*Id.*, ¶ 23).

The next day, Miller allegedly called Plaintiff to advise him that he and Sheriff Lee had talked, and determined that Plaintiff should go back to the FBI and "straighten this matter out," which Plaintiff claims he did. (*Id.*, ¶¶ 25-26). He contends that he returned to the FBI office once to sign the interview transcript and several more times for repetitive questions about the marijuana and pornographic materials. (*Id.*, ¶ 27). He claims that it was probably during this period that he failed a polygraph test on drug use, but passed a urine test for drugs. (*Id.*, ¶ 28). He claims that he also may have been asked during this test if he gave keys to anyone associated with Marcotte. (*Id.*, ¶ 29). The FBI allegedly sent its report to Internal Affairs who subsequently called Plaintiff for an interview with Miller and another person. (*Id.*, ¶ 30). According to Plaintiff, they read him the report and asked him if he wanted to change any of his statements, which he declined to do. (*Id.*). About a month later, he was terminated. (*Id.*, ¶ 31).

At his hearing regarding unemployment benefits, Plaintiff contends Miller testified that he had recommended to Lee that Plaintiff be fired, and further testified that Plaintiff "was playing both ends against the middle; the FBI was on one end and the department was on the

other end." (*Id.*, ¶ 36).

Plaintiff alleges that his termination constitutes a violation of his First Amendment right of free speech. Plaintiff argues that his theory of recovery is that Defendants acted on a "retaliatory motive." In Plaintiff's "Opposition to Motion to Dismiss," he identifies Miller's testimony at his unemployment benefits hearing, that Plaintiff was "playing both ends against the middle," i.e., disclosing to both agencies what the other was asking him about in the bail bond investigation, as the protected speech protected by the First Amendment, and thus the source of his First Amendment retaliation claim. He argues that these communications are direct evidence of the discharge reason. (Pla. Opp. to Motion for Summary Judgment, p. 2).

He alleges that the retaliatory motive of the Jefferson Parish Sheriff's Office, or "JPSO" in terminating him, possibly derives from Plaintiff's reporting to the FBI that defendants had questioned and polygraphed him about the bail bond matter, particularly the notion that he had given a key to the jail to Louis Marcotte, during the federal grand jury investigation before the IAD began its own investigation.

He contends that the retaliatory motive of the federal government might derive from its perception both that Plaintiff was not forthcoming and "leaking" information about the FBI investigation to potential JPSO bail bond defendants.

In their motion for summary judgment, Defendants provide the following explanation of the pertinent facts. Defendants contend that Plaintiff was terminated following an internal investigation which ensued after the FBI informed JPSO that FBI agents executed a search warrant at Plaintiff's listed address for child pornography and found sexually explicit photographs on a computer used by Plaintiff's daughter, as well as four bags of marijuana which

Plaintiff said were his. They contend that in an internal investigation conducted by JPSO Internal Affairs, Plaintiff was found to have lied about his ownership of the marijuana. Further, they contend that although Plaintiff had listed his residence on JPSO records as the address where the search warrant was executed, he subsequently told JPSO investigators that he actually lived in Hammond, not Marrero.

Defendants contend that during their investigation, the U.S. Attorney's Office informed Internal Affairs that they would not prosecute Plaintiff on the marijuana possession charge, provided the internal investigation resulted in his termination. Defendants claim that Internal Affairs recommended to Sheriff Lee that Plaintiff be terminated, having found him to be in violation of the Sheriff's Office Code of Conduct, Article 27, Adherence to Law; Article 29, Truthfulness; and Article 74, Residence, Telephone, and Reporting Change.

Defendants next argue that Plaintiff's allegations fail to reveal any factual or legal basis for his claim that his termination constituted a violation of his First Amendment right of free speech. They contend that he certainly did not have a First Amendment right to lie to the FBI, even if he felt he had justifiable reasons. They further contend that he cannot complain that his right of free speech was violated by requiring him to cooperate with internal investigative interviews and procedures. They argue that those procedures, conducted legitimately, and pursuant to his employer's published employment policies, were plainly necessary to protect the integrity and security of Sheriff Lee's operations. They claim that the decision to terminate his employment, based on the findings of the IAD investigation, was amply justified for the same reasons. Finally, they point out that Plaintiff was not subjected to criminal prosecution for anything he said to either IAD or the FBI. Rather, it appears that he was not prosecuted by the

U.S. Attorney's Office, as he could have been, only because the JPSO took effective disciplinary action by terminating his employment.

In summary, Defendants argue that Plaintiff was terminated for three reasons, but principally as a result of his lying about marijuana found in his home, which lie was told on at least two occasions – once to the FBI and at least once on a polygraph test submitted to him by the JPSO. Further, they point out that Plaintiff actually admitted that he lied to the FBI regarding the marijuana. Defendants note that it is still unclear exactly what speech Plaintiff claims constituted a violation of his First Amendment rights. While Plaintiff claims that there were retaliatory motives by the Defendants and/or the federal government, Defendants point out that it is unclear what the Defendants were allegedly retaliating against. They question why the JPSO Defendants would be upset that the Plaintiff reported to the FBI that the Defendants had questioned and polygraphed him.

**II. DISCUSSION**

*First Amendment Claim*

Plaintiff claims he was terminated in retaliation for protected speech. To establish a First Amendment retaliation claim, Plaintiff must show that (1) he suffered an "adverse employment decision"; (2) his speech involved "a matter of public concern"; (3) his "interest in commenting on matters of public concern . . . outweigh[s] the Defendant's interest in promoting efficiency"; and (4) his speech motivated the adverse employment decision." *Beattie v. Madison County School District*, 254 F.3d 595, 601 (5th Cir. 2001). An employee speaks on a matter of public concern when his speech addresses "any matter of political, social, or other concern to the community." *Mayes v. Galveston County Juvenile Detention Center*, 2002 WL 432652, at *2

(5th Cir. 2002). To prevail, Plaintiff must show that he engaged in protected conduct and that it was a motivating factor in his discharge. *Id.* The last element is one of causation: if the decision-maker who imposed the adverse employment action was not motivated by the speech, then the speech did not cause the adverse employment action. *Johnson v. Louisiana*, 369 F.3d 826, 830 (5th Cir. 2004) citing *Beattie v. Madison County School District*, 254 F.3d 595, 601 (5th Cir. 2001).

If Plaintiff can prove causation, then the burden shifts to Defendants to show by a preponderance of the evidence that they would have come to the same conclusion in the absence of the protected conduct. *Id.*

The first element of his First Amendment retaliation claim under § 1983 is not in dispute. Plaintiff was terminated from his employment with the Jefferson Parish Sheriff's Office.

The second element is not as clear. Plaintiff very generally cites the "disclosures" he made regarding the "bail bond investigation," as the protected speech. (Pla. Opp. to Motion for Summary Judgment, p. 2). Although it is unclear precisely what specific "disclosures" Plaintiff is referring to in his "Opposition," the Court assumes that the discussions with Deputy Chief Miller on January 9, 2004 and with the FBI on January 23, 2004 are at issue. The Court must then determine whether this speech was a "matter of public concern." *Beattie*, 369 F.3d 826, 830. The bail bond investigation is logically a matter of concern to the community. Indeed, the Court finds the safety and security of a community's jail system is of great public concern.

The Court does not reach the third element since it is unnecessary for the resolution of this motion.

The fourth element, or "speech motivating the adverse employment action," has not been

shown by Plaintiff.  The center of Plaintiff's argument is that these "disclosures" were the "reason alone" why Plaintiff was terminated.  (Pla. Opp. to Motion for Summary Judgment, p. 3).  In supporting this argument, Plaintiff notes that Assistant U.S. Attorney Michael Magner "advised" Sheriff Harry Lee that the Government would not prosecute Plaintiff on a marijuana possession charge if the Jefferson Parish Sheriff's Office internal investigation resulted in his termination.  The only evidence that Plaintiff cites as support that these "disclosures" caused his termination is the time-line of the investigation and his subsequent termination as it relates to the Assistant U.S. Attorney's communication involving the drug charge.  Specifically, Plaintiff notes that Miller signed off on the IAD findings on March 29, 2004, received additional notes on March 30, 2006, referring to the "demand," and added his own memorandum dated April 1, 2004 also referring to Magner's "demand." (Pla. Opp. to Motion for Summary Judgment, p. 3).

    The record indicates a memorandum dated April 1, 2004 was in fact written by Defendant Miller.  However, the memorandum merely indicates the communication took place "sometime after 3/10/04." (Def. Memo in Supp. Motion for Summary Judgment, Exh. C.)  The record also indicates that the IAD report was finished and signed on March 29, 2004.  One month later, on April 30, 2004, the termination letter was sent.

    Plaintiff relies on this chronology to support his claim.  There is no other corroborating evidence pointing toward retaliation based on the "disclosures."  This unsupported claim fails to recognize that the IAD report was merely a *recommendation* to Sheriff Harry Lee.  It was up to the Sheriff to make the final decision.  The suggestion that a termination recommendation takes a month to clear the governmental administrative process, not to mention a full review and decision by the Sheriff, is not enough evidence to defeat summary judgment.

Plaintiff's argument completely ignores the fact that the Assistant U.S. Attorney's advisory on prosecution was based on the illegal drug discovery at the home of a Jefferson Parish law enforcement officer.  Generally, Plaintiff disregards the cited reasons for his termination in the Internal Affairs Division report, namely Article 29 Truthfulness, Art. 74 Reporting Address change, and Art. 27 Adherence to law (marijuana possession). (Def. Exh. B.) Instead, Plaintiff briefly addresses these conduct charges, arguing there was "no move" to terminate him until the Assistant U.S. Attorney's "demand" that he be fired. (Pla. Opp. to Motion for Summary Judgment, p. 3).

The record shows that Plaintiff lied twice about the marijuana possession.  Therefore, Defendants' assertion that Plaintiff has been untruthful, is well founded.  The record also shows that marijuana was found at Plaintiff's home, and that he admitted it was his.  Marijuana is an illegal drug, and thus Defendants' administrative finding that Plaintiff failed to adhere to the law, is well supported.  The failure to report an address change is disputed by the parties.  At the very least, Plaintiff was living in two places at once, without notifying the department of this dual living arrangement.  These three reasons independently justify Plaintiff's termination.

After considering all of the parties' arguments, the Court concludes that Plaintiff has failed to show a causal connection between the protected speech and the adverse employment decision.  Therefore, the burden of proof does not shift to Defendants to show by a preponderance of the evidence that they would have come to the same conclusion in the absence of the protected conduct.  Moreover, even if Plaintiff could prove this causal link, the record is ripe with independent reasons for Defendants to have terminated his employment.  Namely, a law enforcement officer in admitted possession of an illegal drug.  Therefore, this Court finds

summary judgment appropriate.

    ACCORDINGLY,

    **IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.

New Orleans, Louisiana, this 7th day of September, 2006.

                                                      _____
                                                      JAY C. ZAINEY
                                                      UNITED STATES DISTRICT JUDGE